FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2010 NOV 15 AM 11: 41

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLOR..
FT. MYERS. FLORIDA

THE CINCINNATI INSURANCE COMPANY,
Plaintiff,

Case No:

-v-

Judge:

ROYAL PALM BUILDERS II, INC.
MBR PARTNERS, LP, as General Partners of
CS-2, VENTURE, a General Partnership
THE BREAKWATER COMMONS ASSOCIATION, INC.
Defendants.

2:10-cv-681-FtM-29SPC

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff The Cincinnati Insurance Company, by counsel, sues Defendants Royal Palm Builders II, Inc., MBR Partners LP, as general partners of CS-2, Venture, a General Partnership, and The Breakwater Commons Association, Inc., and alleges:

### JURISDICTION AND VENUE

1.     This is an action for declaratory judgment and for such further relief as may be necessary or proper, pursuant to 28 U.S.C. §2201(a), to declare the rights, status and legal relations of Plaintiff and Defendants under insurance policy contracts.

2.     Plaintiff The Cincinnati Insurance Company (Cincinnati) is a corporation organized and existing under the laws of Ohio, with its principal place of business in Cincinnati, Ohio.

3.     At all material times, Cincinnati was engaged in the business of issuing insurance policies to indemnify against various, specified risks, and authorized by the Florida Department of Financial Services to conduct business in Florida.

4.    At all material times, Royal Palm Builders II, Inc. (RPB), was a corporation organized and existing under the laws of Florida, authorized to conduct business in Florida as a general contractor, and having its principal place of business in Naples, Florida.  Upon information and belief, RPB has been dissolved since February 5, 2005.

5.    At all material times, MBR Partners, LP, was a limited partnership organized and existing under the laws of Delaware and registered in Florida until September 14, 2007, when its registration was revoked for its failure to file an annual report.

6.    Defendant The Breakwater Commons Association, Inc. (Breakwater) is a not-for-profit Florida corporation organized and existing pursuant to Chapter 617, Florida Statutes, to provide a corporate entity, pursuant to Section 718.111, for the operation of the condominiums comprising Breakwater, which are located in Collier County, Florida.

7.    The amount in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs, and this court has diversity jurisdiction of this cause under 28 U.S.C.§1332.

8.    Venue in the Middle District of Florida is proper, pursuant to 28 U.S.C. §1391(a), because at least one of the defendants resides within the district and because the events giving rise to the claim occurred within the Fort Myers Division of the district, pursuant to M.D. R.1.02(b)(5) and (c).

## GENERAL ALLEGATIONS

9.      Cincinnati issued commercial general and umbrella liability insurance policies to RPB and CS-2 Venture (CS-2).

10.      In 2007, Breakwater filed a civil action against RPB, CS-2, and MBR, in the Circuit Court of Collier County, Florida, case number 0-72037-CA ("the underlying action").  A copy of the Amended Complaint is attached as Exhibit "A."

11.      It is alleged in the underlying action that RPB was the general contractor for the condominiums of Breakwater, and that CS-2, through its general partners RPB and MBR, was the developer of the condominiums.

12.      Cincinnati has defended RPB and CS-2 in the underlying action under reservation of right and subject to various coverage defenses raised and implicated by the claims asserted by Breakwater.

13.      The policies' insuring agreements provide in pertinent part that:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION I – COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

b.  This insurance applies to "bodily injury" and "property damage" only if:

(2)     The "bodily injury" or property damage" occurs during the policy period; and

(3)     Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, you did not know, per Paragraph 1.d. below that the "bodily injury; or property damage" had occurred or had begun to occur, in whole or in part.

c.  "Bodily injury" or "property damage" which:

(1) Occurs during the "coverage term"; and

(2) Was not, prior to the "coverage term", known by you, per Paragraph 1.d. below, to have occurred;

Includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "coverage term" in which it first became known by you.

d.  You will be deemed to know that "bodily injury" or "property damage" has occurred at the earliest time when any "authorized representative":

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage:;

(3) First observes, or reasonably should have first observed, the "bodily injury" or "property damage";

(4) Becomes aware, or reasonably should have become aware, by any means other than as described in (3) above, that "bodily injury" or "property damage" had occurred or had begun to occur; or

(5) Becomes aware, or reasonably should have become aware, of a condition from which "bodily injury" or "property damage" is substantially certain to occur.

2.  Exclusions

This insurance does not apply to:

4

j.  Damage to Property

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

k.  Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

l.  Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m.  Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property' or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use or other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

5

20.   "Property damage" means:

   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such  loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.   Loss of use of tangible property that is not physically injured. All such loss use shall be deemed to occur  at the time of the "occurrence" that caused it.

25.   "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   b. Includes:

      (1)   Warranties or representations made at any time with respect to the fitness, quality,  durability, performance or use of "your product"; and

      (2)   The  providing  of  or  failure  to  provide  warnings  or instructions.

   c. Does not include vending machines or other property rented to or located for the use of others but not sold.

26. "Your work":

   a.   Means:

      (1)   Work or operations performed by you or on your behalf; and

       (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

       (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

       (2)    The providing of or failure to provide warnings or instructions.

## COMMERCIAL UMBRELLA LIABILITY COVERAGE FORM

## SECTION 1-COVERAGE

A. Insuring Agreement

1. We will pay on behalf of the insured the "ultimate net loss" which the insured is legally obligated to pay as damages for "bodily injury", "personal and advertising injury" or "property damage" to which this insurance applies:

    a.   Which is in excess of the "underlying insurance"; or

2. This insurance applies to "bodily injury", "personal and advertising injury" or "property damage" only if:

    b.   The "bodily injury" or "property damage" occurs during the policy period shown in the Declarations; or

    d.   Prior to the "coverage term" in which "bodily injury" or "property damage" occurs, or a "personal and advertising injury" offense is committed, you did not know, per Paragraph 5 below, that the "bodily injury" or "property damage" had occurred or had begun to occur, in whole or in part, or that the "personal and advertising injury" offense had been committed or had begun to be committed in whole or in part.

5. You will be deemed to know that "bodily injury" or "property damage" has occurred, or that "personal and advertising injury" offense has been committed at the earliest time when any "authorized representative":

a. Reports all, or any part, of the "bodily injury", "personal and advertising injury" or "property damage" to us or any other insurer;

b. Receives a written or verbal demand or claim for damages because of the "bodily injury", "personal and advertising injury" or "property damage";

c. First observes, or reasonably should have first observed, the "bodily injury" or "property damage", or the offense that caused the "personal and advertising injury";

d. Becomes aware, or reasonably should have become aware, by any means, other than as described in c. above, that "bodily injury" or "property damage" had occurred or had begun to occur, or that the "personal and advertising injury" offense had been committed or had begun to be committed; or

e. Becomes aware or reasonably should have become aware, of a condition from which "bodily injury", "personal and advertising injury" or "property damage" is substantially certain to occur.

B. Exclusions

This insurance does not apply to:

4. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

a. A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

b. A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after is has been put to its intended use.

6. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

7. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

20. "Property damage" means:

a. Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

28. "Your Product":

a. Means:

   (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       (a) You;

       (b) Others trading under your name; or

       (d) A person or organization whose business or assets you have acquired; and

   (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product; and

   (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

29. "Your Work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and

        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        (2) The providing of or failure to provide warnings or instructions.

14. The claims asserted by Breakwater in its Amended Complaint are for breach of implied warranty, negligence, and violation of **Fla. Stat.** §553.84.

15. Breakwater alleges that the condominiums have design and construction defects that have caused damage to Breakwater in costs to repair "defects and deficiencies," which are undisclosed by the Amended Complaint.

16. Also undisclosed by the Amended Complaint is when the alleged defects and deficiencies were discovered or manifested, or when any damage attributable to the alleged defects or deficiencies occurred or manifested.

17. The existence, extent, and availability of liability insurance coverage for the claims and damages alleged by Breakwater are governed by principles of Florida law regarding "property damage" caused by an "occurrence," as articulated, interpreted, and applied by federal and state courts in Florida.

18. Because of the distinction between allegedly defective work that causes property damage and allegedly defective work that needs to be repaired or replaced but

did not cause property damage, together with the large size of the project (27 buildings and 216 units), Cincinnati is in doubt about its rights under the policies, and therefore seeks a declaration of coverage with respect to the claims described by the underlying action.

19.     In particular, Cincinnati is unable, without a determination by the Court, to allocate or apportion between damages that may qualify for coverage and those damages that may not be covered.

20.     Cincinnati is also in doubt about its rights under the policies regarding the manifestation of defects or damages alleged by Breakwater, or when any such defects or damage actually occurred.  The terms of the policies restrict coverage, if any, to property damage caused by an occurrence during the policy period and that was not known by any insured before the policy period.

21.     There exists a bona fide actual, present and practical need for the declaration of coverage available under the polices and the rights and obligations of the parties.

22.     There exists also a present ascertained or ascertainable state of facts or controversy as to a state of facts concerning the rights and obligations of Cincinnati and Defendants under the policies.

23.     The rights and obligations of Cincinnati under the policies are dependent upon the facts, and law applicable to those facts, affecting coverage, if any, for the claims and damages asserted by Breakwater.

24.     All proper and present interests are before the court, and all conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

WHEREFORE, Plaintiff The Cincinnati Insurance Company respectfully requests this Court to enter a judgment declaring that:

i.      Cincinnati has no duty to indemnify Defendants for one or more types, elements or categories of claims or damages asserted by Breakwater in the underlying action;

ii.     Cincinnati has no duty to indemnify Defendants in connection with any verdict, judgment, or settlement for damages, or categories or elements of damages, that the Court determines are outside the scope of coverage under the policies, and

iii.    Cincinnati further requests judgment for its costs and disbursements incurred herein and for such other and further relief as may be warranted.

David A. Glenny, Trial Counsel
Florida Bar No. 371807
Susan J. Cole
Florida Bar No. 270474
BICE COLE LAW FIRM, P.L.
1333 S.E. 25 Loop, Suite 101
Ocala, FL 34471-1071
(352) 732-2255
(352) 351-0166 – facsimile
glenny@bicecolelaw.com
THE CINCINNATI INSURANCE COMPANY